In re:

CORDIA COMMUNICATIONS CORP., *et al*,[1]

     Debtors.

_____/

CORDIA COMMUNICATIONS CORP.,
CORDIA COMMUNICATIONS CORP. OF
VIRGINIA, MY TEL CO. INC., and
NORTHSTAR TELECOM, INC.

     Plaintiffs,

v.

VERIZON SERVICES CORP., QWEST CORPORATION,
AFFINITY NETWORKS, INC.  d/b/a ANI NETWORKS,
ONE COMMUNICATIONS CORP and
PAETEC COMMUNICATIONS, INC.,

     Defendants.

_____/

Case Nos.: 6:11-bk-06493
through 6:11-bk-06497

(Joint Administration Requested)

Chapter 11

Adv. Pro. No:  11-_____

## ADVERSARY COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, Cordia Communications Corp. ("CCC"), Cordia Communications Corp. of

Virginia ("CCCVA"), My Tel Co., Inc. ("MTC"), and Northstar Telecom, Inc. ("NST")

(collectively, the "Plaintiffs" or the "Debtors"), by and through undersigned counsel, hereby sue

the defendants Verizon Services, Corp. ("Verizon"), Qwest Corporation ("Quest"), Affinity

---

[1]  The last four digits of the taxpayer identification number for each of the debtors are: Cordia Communications
Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group,
Inc. [5042], and Northstar Telecom, Inc.[9662]. The mailing address for the Debtors is 13275 W. Colonial Drive,
Winter Garden, FL 34787.

Network, Inc. d/b/a ANI Networks ("ANI"), One Communication, Corp. ("One Comm") and

PAETEC Communications, Inc. ("Paetec,") and together with the Verizon ANI, Qwest, and One

Comm,  collectively the "Defendants"), and state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b), 1334.

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A)

in which this Court is authorized and empowered to hear and determine and to enter appropriate

orders and judgments, subject to review under 28 U.S.C. § 158.

3.      The statutory predicates in support of the relief requested is 11 U.S.C. §§ 105 and

366, and Federal Rules of Bankruptcy Procedure 7001 and 7065.

4.      Venue of this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409(a) inasmuch as this adversary proceeding is being filed in a case pending before this Court.

## THE PARTIES

5.      The Plaintiffs are debtors-in-possession in the above-styled Chapter 11

proceedings.

6.      Defendant Verizon Services, Corp. is a Delaware corporation with its principal

place of business in Arlington, Virginia.

7.      Defendant Qwest is a Colorado corporation with its principle place of business in

Denver, Colorado.

8.      Defendant ANI is a California corporation with its principal place of business in

Las Vegas, Nevada.

9.      Defendant One Comm is a Delaware corporation with its principal place of

business in Rochester, New York.

10.     Defendant PAETEC is a Delaware corporation with its principal place of business in Fairport, New York.

## BACKGROUND

11.     On May 1, 2011 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

12.     The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

13.     CCC, CCCVA, NST, and MTC (collectively, the "CLEC Debtors") provide telecommunications services as a competitive local exchange carrier.

14.     The CLEC Debtors offer small businesses and residential consumers bundled services that include local dial tone, unlimited domestic long distance, and unlimited feature plans by leasing a portion of the network owned by other telecommunications carriers.

15.     These leasing arrangements are controlled by multi-state, multi-year interconnection and commercial services agreements that allow the CLEC Debtors to offer telecommunications services to consumers without incurring the capital expenditures associated with building its own network. Certain of the CLEC Debtors have commercial services agreements with both incumbent local exchange carriers, including the Defendants and non-incumbent carriers.

16.     CCC currently holds licenses to operate in twenty-eight (28) states throughout the contiguous United States, and CCCVA is licensed in Virginia.  MTC is licensed to offer local and long distance services in nine (9) states and has customers in seven (7) of those states.  NST currently holds licenses to operate in thirteen (13) states and provides services in twelve (12) states.  The CLEC Debtors currently have approximately 56,000 accounts.

## A. The Interconnection Agreements

17. CCC and the Defendant Verizon are parties to a certain Wholesale Advantages Services Agreement, effective as of January 1, 2005, as amended (the "Verizon Agreement").

18. CCC and Defendant ANI are parties to a certain Carrier Service Agreement, executed or about March 28, 2003, as amended (the "ANI Agreement").

19. CCC and NST, respectively, are parties to a certain Qwest Local Services Platform Agreement with Defendant Qwest, each dated on or about September 23, 2010 (collectively the "Qwest Agreements").

20. CCC and Defendant One Comm are parties to a certain Wholesale Services Agreement, effective as of May 19, 2009 (the "One Comm Agreement").

21. CCC and Defendant Paetec are parties to a certain Wholesale Master Service Agreement, dated July 20, 2005 (the "Paetec Agreement").

22. The Verizon Agreement, ANI Agreement, Qwest Agreement, One Comm Agreement and Paetec Agreement (collectively the "Interconnection Agreements") govern the leasing arrangements between the Debtors and the Defendants for bundled telecommunications service.

23. The Interconnection Agreements, each as amended, remain in effect to date.

## B. Default Notice by Defendant Verizon

24. Prior to the Petition Date, Defendant Verizon notified CCC that CCC was in default of its payment obligations under the Verizon Agreement (the "Verizon Default Notices").

25. Among other things, Defendant Verizon asserted that CCC was required to provide adequate assurances of payment.

26.     Defendant Verizon further asserted that if CCC did not deliver adequate assurance of payment, Defendant Verizon would exercise its rights and immediately suspend acceptance and processing of all new pending orders, i.e., terminate the Verizon Agreement.

27.     Termination of the Verizon Agreement would cause immediate and irreparable harm to the Debtors as it would frustrate and impair the restructuring process and potentially derail any efforts toward completing the intended sale of the Debtors assets.

## C.     Adequate Assurance under Section 366

28.     Through its Notices of Default, Defendant Verizon has asserted that it is entitled to adequate assurance payments and other relief.

29.     While the Debtors are not currently in default of their obligations to Defendants ANI, Qwest, One Comm or Paetec, all of the Defendants are parties to respective Interconnection Agreements with the Debtors and may assert that they are each entitled to adequate assurance under Section 366 of the Bankruptcy Code.

30.     11 U.S.C. § 366 addresses the circumstances under which a utility may alter post-petition services to a debtor in a bankruptcy proceeding.    Specifically subsection (a) automatically enjoins a utility from altering, refusing or discontinuing such post-petition services "solely on the basis of the commencement of a case . . . or that a debt owed by the debtor to such utility for service rendered before the order of relief was not paid when due." 11 U.S.C. § 366(a).

31.     Subsection (b) of Section 366 limits the automatic aspect of the injunction to only twenty (20) days.    Specifically, Section 366(b) provides that a utility may, "alter, refuse or discontinue service if neither the trustee nor the debtor within 20 days after the date of the order

for relief, furnishes adequate assurance of payment in the form of a deposit or other security for service after such date." 11 U.S.C. § 366(b).

32.     Section 366(b) further provides that "[o]n a request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance payment." 11 U.S.C. § 366(b).

33.     Upon the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Section 366 was amended to add a new subsection (c). Section 366(c) limits what a debtor may offer as "adequate assurance of payment." 11 U.S.C. § 366(c)(1)(A).

34.     Section 366(c) also provides when the automatic injunction of subsection (a) may continue beyond 30 days. Specifically, a utility may "alter, refuse, or discontinue utility service if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor . . . adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).

35.     While the Bankruptcy Code does not define "utility," the legislative history of Section 366 states that "[11 U.S.C. Section 366] is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." See House Report No. 95-595, 95th Cong., 1st Sess (1977) 350. U.S.C.C.A.N. pp. 5787, 6306.

## COUNT I

### (Declaratory Relief Against All Defendants)

36.     The Plaintiffs reallege and incorporate the allegations contained in Paragraphs 1 through 35 of this Adversary Complaint as if fully set forth herein.

37.     The Defendants are not a "utilities" for the purposes of 11 U.S.C. § 366.

38.     Among other things, the services provided by Defendants under the respective Interconnection Agreements are provided as a supply of services to be resold to end customers more akin to inventory rather than a vital service as contemplated under Section 366.

39.     Consequently, 11 U.S.C. § 366 does not apply to the business relationship between the Debtors and the Defendants and Defendants are not entitled to adequate assurance as contemplated thereunder.

40.     The business relationship between the Debtors and Defendants is governed by 11 U.S.C. § 365, which concerns executory contracts.

**WHEREFORE**, the Plaintiffs request that the Court enter judgment in their favor on Count I of the Complaint declaring that the Defendants are not utilities for purposes of Section 366 of the Bankruptcy Code and grant such other relief as the Court deems just and proper.

# COUNT II

## (Alternative Declaratory Relief Against All Defendants)

41.     The Debtors reallege and incorporate the allegations contained in Paragraphs 1 through 35 of this Adversary Complaint as if fully set forth herein.

42.     Alternatively, if the Court determines that and of the Defendants are a "utility" such that Section 366 is applicable to the business relationship between the Debtors and such Defendants, such relationship is governed by subsection (b) of Section 366 as opposed to subsection (c).

43.     Subsection (b) provides, in relevant part, that a "utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment in the form of a deposit or other security, for services after such date." 11 U.S.C. § 366(b). Subsection (b) further provides that "[o]n a request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance payment." 11 U.S.C. § 366(b).

44.     In comparison, subsection (c), a utility may "alter, refuse, or discontinue utility service if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor . . . adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).

45.     "Utility service" in subsection (c) means traditional services that the Debtor consumes in contrast to the services provided pursuant to the Interconnection Agreements that are at the crux of the business relationship between the Debtors and the Defendants.

46.     Consequently, in the event that any of the Defendants are deemed a "utility" for purposes of adequate assurance under Section 366, the applicable subsection is subsection (b) as opposed to subsection (c).

**WHEREFORE**, the Plaintiffs request that in the event that Section 366 is applicable to the Defendants as a utility, the Court find judgment in their favor on Count II of the Complaint and enter a judgment declaring that the appropriate provision for relief is Section 366(b) of the Bankruptcy Code and issue such other relief as the Court deems just and proper.

Dated: May 1, 2011

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Proposed Counsel for the Debtors*
1450 Brickell Avenue, Suite 200
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/   Scott L. Baena
    Scott L. Baena
    Fla. Bar No. 186445
    sbaena@bilzin.com
    Jason Z. Jones
    Fla. Bar No. 186554
    jjones@bilzin.com
    Jeffrey I. Snyder
    Florida Bar No. 21281
    jsnyder@bilzin.com
    Silvia S. Duarte
    Fla. Bar No. 83531
    sduarte@bilzin.com